UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOUISIANA WILDLIFE AND FISHERIES COMMISSION, et al., <br><br> Plaintiffs, <br><br> v. <br><br> XAVIER BECERRA, <br><br> Defendant. | No.  2:19-cv-02488-KJM-CKD <br><br><br> ORDER |

      Nonparties Center for Biological Diversity, Humane Society International, and Humane Society of the United States (the "applicants" or "proposed intervenors") move to intervene as defendants in this case concerning the enforceability of California Penal Code § 653o as it relates to the trade in products made from alligators and crocodiles.  Mot., ECF No. 24.  Plaintiffs oppose.  Opp'n, ECF No. 25.  Applicants have replied.  Reply, ECF No. 28.  On March 6, 2020, the court heard argument on the motion in a consolidated hearing with an identical motion in a related case, *April in Paris v. Becerra*, No. 2:19-cv-02471-KJM-CKD.  At hearing, Joseph Scott St. John appeared for Louisiana Wildlife Fisheries Corp., Ali Karaouni appeared for the defendants, and certified law students Erica Imwald and William Conlon appeared for applicants under the supervision of Deborah Sivas and Alicia Thesing.  Brian Weir appeared telephonically for the Louisiana Fish and Wildlife Comm'n and Taylor Darden appeared

telephonically for the Louisiana Landowners Association. Having considered the papers and the arguments of counsel, the court now GRANTS the motion.

I.     BACKGROUND

Plaintiff Delacroix Corp. is a Louisiana-based landholding corporation that "owns approximately 100,000 acres of American alligator habitat in Louisiana, and the company derives substantial revenue from the sale of American alligator eggs harvested on its property." Compl. ¶ 3, ECF No. 1. Plaintiff Louisiana Landowners Association, Inc. is a Louisiana non-profit corporation, which "represents about 200 landowners from across Louisiana" who "derive substantial revenue from the sale of American alligators and alligator eggs harvested on their property." *Id.* ¶ 4. The Louisiana Wildlife and Fisheries Commission is a governmental organ of the State of Louisiana, that "equips, maintains, and controls wildlife management areas, which include large areas of alligator habitat in Louisiana." *Id.* ¶ 5. These plaintiffs have sued California Attorney General Xavier Becerra to stop enforcement of California Penal Code § 653o with regard to alligator and crocodile parts. *See generally* Compl. On December 12, 2019, plaintiffs moved for a temporary restraining order and preliminary injunction. Mot. for TRO, ECF No. 2. On December 20, 2019, the parties stipulated to a temporary restraining order to remain in place pending the determination of the preliminary injunction. Stip., ECF No. 12. The court issued the TRO based on the parties' stipulation.

California Penal Code § 653o provides:

> Commencing January 1, 2020, it shall be unlawful to import into this state for commercial purposes, to possess with intent to sell, or to sell within the state, the dead body, or any part or product thereof, of a crocodile or alligator.

Cal. Pen. Code § 653o(b)(1). A separate statute, California Penal Code section 653r, also makes it unlawful to "possess with intent to sell, or to sell, within this state, after June 1, 1972, the dead body, or any part or product thereof, of any fish, bird, amphibian, reptile, or mammal specified in Section 653o or 653p." Cal. Pen. Code § 653r.

A California ban on trade in crocodile and alligator parts has existed in § 653o since the 1970s. Cal. Pen. Code § 653o (1970) (originally enacted as Stats. 1970, ch. 1557, p.

3186, §1).  However, a judge of this court granted a permanent injunction against its enforcement as to American alligators on preemption grounds in *Fouke Co. v. Brown*, 463 F. Supp. 1142 (E.D. Cal. 1979).  The statute remained on the books but enjoined from enforcement under *Fouke* until 2006, when the California Legislature removed alligators and crocodiles from the list of protected animals in the statute.  Cal. S.B. No. 1485, 2005–2006 Reg. Sess. (Cal. 2006).   That version of the statute included a sunset provision again making trade illegal after January 1, 2010.  *Id.* Subsequent amendments extended the date of the sunset provision, most recently to January 1, 2020. Cal. A.B. No. 2075, 2013–2014 Reg. Sess. (Cal. 2014).  The most recent re-enactment of the law passed without an extension to the sunset date, making sales of alligator or crocodile parts unlawful once again as of January 1, 2020.  Cal. A.B. No. 1260, 2019–2020 Reg. Sess. (Cal. 2019).

Plaintiffs assert § 653o (1) is expressly preempted under the Supremacy Clause; (2) is preempted through conflict preemption; (3) obstructs California's channels of commerce in violation of the Commerce Clause and (4) constitutes extraterritorial regulation in violation of the Commerce Clause.  Compl. ¶¶ 46, 55, 59, 66–67.  A separate set of plaintiffs sue Attorney General Becerra and California Department of Fish and Wildlife Director Charlton H. Bonham on a substantially similar theory and the case has been related.  *See April in Paris et al. v. Becerra,* No. 2:19-cv-02471-KJM-CKD.

Applicants are nonprofit organizations that "advocate for and defend laws that limit the commercial exploitation of wildlife at the international, national, and state levels." Mem. P. & A., ECF No. 31-1 at 6.  Their asserted interest is "preserving biodiversity and protecting animals."  Reply at 5.  All three applicants engage in advocacy and lobbying efforts to support state and federal laws and regulations protective of wildlife.  Mem P. & A. at 11–12.  In this instance, the applicants were part of a coalition of groups that opposed bills that would have extended the sunset provision.  *Id.* at 13.

After hearing on applicants' motion, defendants filed their opposition to the preliminary injunction.  Opp'n to Prelim. Inj., ECF No. 34.  The opposition argues the court
/////

3

should construe California Penal Code § 653o to ban only intrastate commerce in crocodile products.

II.     LEGAL STANDARD

Rule 24(a) provides:

> On timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a).  Absent an express statutory grant of the right to intervene, an applicant may intervene of right when it shows that: "(1) the application for intervention must be timely; (2) the applicant must have a 'significantly protectable' interest relating to the property or transaction that is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect that interest; and (4) the applicant's interest must not be adequately represented by the existing parties in the lawsuit." *Southwest Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 817 (9th Cir. 2001) (citation omitted).  An applicant seeking to intervene has the burden to show these four elements are met, but the requirements are broadly interpreted in favor of intervention. *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011) (citing *Prete v. Bradbury*, 438 F.3d 949, 954 (9th Cir. 2006)).

III.    DISCUSSION

The parties agree the motion is timely.  The court now analyzes the remaining three factors and finds intervention of right is warranted.

A. Significantly Protectable Interest

To establish a significantly protectable interest, a proposed intervenor must show its interest is protectable under some law and that there is a relationship between the legally protected interest and the claims at issue. *Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2003) (citation omitted).  The interest at issue need not be a specific legal or equitable interest.  *Id.*  "A public interest group is entitled as a matter of right to intervene in an action challenging the legality of a measure it has supported." *Idaho Farm*

4

*Bureau Federation v. Babbitt*, 58 F.3d 1392, 1397 (9th Cir. 1993) (citing *Sagebrush Rebellion, Inc. v. Watt*, 713 F.3d 525, 527 (9th Cir. 1993)); *See also Wash. State Bldg. & Const. Trades Council v. Spellman*, 684 F.2d 627, 630 (9th Cir. 1982) ("DWW, as the public interest group that sponsored the initiative, was entitled to intervention as a matter of right under Rule 24(a).").

Here, applicants detail a history of advocacy for the enactment of an enforceable version of §653o. They lobbied California lawmakers to enact A.B. 1260 without extending the sunset provision for the ban on crocodilian products. The California Legislature had a choice in 2019 between a bill revising § 653o to remove protections for crocodiles and alligators entirely, Cal. A.B. 719, and the bill that did not revise the January 1, 2020 effective date of the ban, Cal. A.B. 1260; the Legislature chose the latter. The applicants fought for the bill that ultimately passed. Nothing in the applicable case law addressing the protectable interest of public interest groups supports a different outcome based on the legislative posture here: applicants have established a significantly protectable interest.

B. <u>Impairment of Interest</u>

Applicants must demonstrate their interests would be impaired in a practical sense by disposition of the action in their absence. Fed. R. Civ. P. 24(a)(2). When public interest groups assert an interest in the preservation of a species of animal, defeat of a measure intended to protect that animal that the group supported impairs that interest. *Sagebrush Rebellion*, 713 F.2d at 527; *Idaho Farm Bureau Federation*, 58 F.3d at 1398. Here, applicants' interest in the protection of the crocodilian species protected by § 653o would be impaired if the statute was invalidated.

C. <u>Inadequacy of Representation</u>

The movants' "burden of showing inadequacy of representation is 'minimal' and is satisfied if the applicant can demonstrate that representation of its interests 'may be' inadequate." *Citizens for Balanced Use*, 647 F.3d at 898 (citing *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th

/////

/////

/////

Cir. 2003)); *see also Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972). To evaluate the adequacy of representation, the court examines three factors:

> (1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect.

*Citizens for Balanced Use, id.* (quoting *Arakaki*, 324 F.3d at 1086). The most important factor is how the interest compares to the interests of the existing parties. *Arakaki*, 324 F.3d at 1086. "When an applicant for intervention and an existing party have the same ultimate objective, a presumption of adequacy of representation arises." *Id.* (citing *League of United Latin Am. Citizens*, 131 F.3d at 1305). Proposed intervenors with the same objective but different litigation strategies are normally not entitled to intervention. *Id.* There is also a presumption of adequate representation that arises when the government is acting on behalf of a constituency that it represents. *United States v. City of Los Angeles*, 288 F.3d 391, 401 (9th Cir. 2002). To rebut the presumption of adequacy, applicants must make a "very compelling showing to the contrary." *Arakaki*, 324 F.3d at 1086.

Here, the applicants claim California's stipulation to the temporary restraining order now in place indicates that the state may not adequately represent its interest in full implementation and enforcement of § 653o. On this point, the court disagrees. Briefing and arguing a temporary restraining order is an expedited process. Parties defending a motion for a temporary restraining order have less time to develop their most cogent arguments as compared to almost any other situation in the practice of law. As a result, defendants face the difficult choice of contesting the motion with briefing produced in a rush or stipulating to maintain the status quo to better develop their arguments. If they choose to contest the motion and lose, the early loss on the likely merits can serve as an unpleasant bellwether of the direction of the case, rightly or wrongly. The court does not view California's decision to stipulate and keep its powder dry as an indication of its lack of appetite to defend the challenged statute.

The proposed intervenors cite several Ninth Circuit cases in which intervention was granted despite the applicants' sharing the putative goal of the government, for the

1 proposition that the government will not defend its interests.  These cases are distinguishable,
2 because in them the courts found evidence that supported the conclusion the same agencies
3 responsible for enforcement of the law had particularized incentives not to do so vigorously.  *See*
4 *Citizens for Balanced Use*, 647 F.3d at 895–96, 899 (U.S. Forest Service defended land
5 management plan adopted under court order while simultaneously appealing order requiring its
6 issuance); *Berg*, 268 F.3d at 823 (City of San Diego expressly disclaimed defense of wildlife take
7 plan supported by intervenors would protect intervenor's interests); *Fresno Cty. v. Andrus*, 622
8 F.2d 436, 437 (9th Cir. 1980) (Department of Interior commenced rulemaking in response to
9 lawsuit from proposed intervenors; Ninth Circuit found "reason to doubt that the Department will
10 fully protect [applicants'] interests[.]").  Section 653o was not enacted under duress or
11 compulsion and the executive agencies tasked with its enforcement have not shown particular
12 incentives not to do so.
13         Applicants also argue California may not vigorously defend § 653o because it is a
14 diverse polity that "considers and balances a broad array of stakeholder interests as it adopts and
15 implements public laws and policies," including the interests of Californians opposed to the
16 enforcement of § 653o. Mem. P. & A. at 19.  In support of their argument that California will not
17 vigorously defend, applicants point to the California Legislature's repeated reenactment of later
18 sunset provisions between 2006 and 2019.  They also point to the California Department of
19 Finance's opposition to the bill that enacted this version of § 653o, and the California Department
20 of Fish and Wildlife's support (through its membership in the Association of Fish and Wildlife
21 Agencies) of the competing bill that would have extended the sunset provision.
22         The points reviewed so far do not support a finding of inadequate representation.
23 Their resolution reflects the contentious political process that produced the current law, but
24 ultimately, the Legislature opted to enact the absolute ban on crocodile and alligator trafficking.
25 Unlike the cases cited above, the Legislature's action was not taken in the face of duress or legal
26 compulsion.  To credit applicants' argument would be to negate the presumption of adequacy for
27 all laws that faced opposition before being enacted.  The same goes for applicants' citation of
28 former Governor Brown's veto statement of a similar law, the "Iconic African Species Protection

Act," because he believed it would be unenforceable under the Endangered Species Act. Gov. Edmund Brown, Governor's Veto Message on Senate Bill 1487, Sept. 30, 2018. Governor Newsom voiced no such qualms when he signed § 653o into law without extending the sunset provision. Applicants' line of argument in this respect conflates past opposition to this type of legislation, some of it from governmental subdivisions not tasked with the law's enforcement, with speculation there is a present lack of appetite to vigorously defend the law as enacted.

Since argument on applicants' motion, however, defendants have filed their opposition to the pending preliminary injunction motion. The court takes judicial notice of the opposition, Fed. R. Evid. 201, which provides support for applicants' assertion that "the State . . . may fall back on narrower interpretations of the statute at issue here." Mem. P. & A. at 7. As noted above, defendants' opposition in fact asks the court to construe § 653o as restricting only intrastate commerce in the crocodilian parts at issue, abandoning any claim that the statute regulates importation from out of state. Opp'n to Prelim. Inj. at 4. The balance of the defendants' brief rests on this strained and limited reading in an attempt to save the statute, reasoning from this premise to dismiss the applicability of the ESA's express preemption clause. *See generally* Opp'n to Prelim. Inj. Without reaching the merits of this argument, defendants' briefing supports the conclusion that defendants will not represent applicants' interests in the litigation, including at the critical preliminary injunction phase. Even under a best case scenario for defendants, given their position, the court will interpret the statute to prohibit only intrastate commerce in crocodilian parts, not their importation from out-of-state. Applicants' interests clearly encompass a ban on importation. For this reason, the court finds the existing defendants will inadequately represent applicants' interests and applicants' motion should be granted.

D. Potential Consolidation

Given the congruity of the two cases that currently have been related, the court is considering consolidating this action with *April in Paris, et al. v. Becerra*, 2:19-cv-2471-KJM-CKD, on its own motion under Federal Rule of Civil Procedure 42. The parties and intervenors will be provided an opportunity to provide their positions with respect to potential consolidation.
/////

8

## IV. CONCLUSION

For the foregoing reasons, applicants' motion to intervene is GRANTED. Applicants, now intervenors, also moved for leave to file their proposed brief in opposition to plaintiffs' motion for a preliminary injunction, ECF No. 35. That motion is GRANTED and intervenors' proposed brief, ECF No. 35–1, is hereby deemed filed. On its own motion, the court GRANTS plaintiffs leave to file a separate reply to applicants' opposition no later than seven days prior to the hearing on the motion for the preliminary injunction.

The parties may submit objections to consolidation, if any, of up to ten pages in length no later than fourteen days after the issuance of this order.

This order resolves ECF Nos. 24 and 35.

IT IS SO ORDERED.

DATED: May 11, 2020.

_____
CHIEF UNITED STATES DISTRICT JUDGE